BARRY v. WM. ROYLANCE CO. et al.

(Court of Civil Appeals of Texas. Galveston. May 6, 1911. Rehearing Denied May 25, 1911.)

BROKERS (§ 94*) — CONTRACT — CORRESPONDENCE—CONSTRUCTION.

A car load of apples, shipped to a buyer with draft attached to bill of lading, was delayed and arrived when, because of financial depression, the buyer was not allowed by his bank to withdraw funds to meet the draft. The buyer and the broker who made the purchase wired the seller asking release of the car, promising payment in 30 days. The seller wired the broker offering to release on his guaranty of payment. The broker wired a refusal ·to guarantee, and stated he could get a 30-day note. The seller wired ·back, "Prefer releasing car to you, you making settlement with [buyer]. Will give you thirty days' time. Answer." Broker wired reply, "Release to us at once. Will do the best we can on settlement." *Held*, that the correspondence did not constitute a rescission of the original sale and a new sale to the broker, or a guaranty of payment, so as to make the broker liable for the price.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 94.*]

Appeal from Jefferson County Court; R. W. Wilson, Judge.

Action by the Wm. Roylance Company against C. M. Chinski, doing business as the Southeast Texas Produce Company, and R. J. Barry, doing business as Barry Bros. Judgment against defendant Barry, and he appeals. Reversed and rendered.

Taliaferro & Barry, for appellant. . Crook, Lord & Lawhon, for. appellee.

McMEANS, J. Wm. Roylance & Co. brought this suit against C. M. Chinski, doing business at Beaumont, Tex., under the name of Southeast Texas Produce Company, and R. J. Barry, also doing business at Beaumont under the name of Barry Bros., to recover $270.90, the balance due plaintiff for a car load of apples. Plaintiff alleged that it sold to defendant Chinski one car load of apples containing 602 boxes at the agreed price per box of $1.35, aggregating $812.70, f. o. .b. the cars at Provo, Utah, terms sight draft with bill of lading attached; that in making the contract of sale defendant Barry acted as broker for said

Chinski; that under the terms of the contract said Chinski had the right of inspecting the apples before accepting them, and that, when the apples reached Beaumont, the said Chinski did inspect and accept them, but that, being unable to take up the sight draft drawn on him by plaintiff at that time, said Chinski requested plaintiff to release the bill of lading and the car load, agreeing in such event to pay the price of same in 30 days, but that plaintiff refused to release the car load of apples to Chinski, but did release the same to defendant Barry; and that the latter guaranteed the payment of the purchase price in 30 days, but that both had refused to pay for the apples except the sum of $541.80, leaving a balance due plaintiff of $270.90, for which it sued. Plaintiff alleged in the alternative that, if it be shown on the trial that there was a rescission of the contract of sale to Chinski, then that, after the car load arrived in Beaumont, the defendant Barry entered into a contract with plaintiff wherein and whereby he agreed to purchase and did purchase said car load of apples at the agreed price of $812.70. Prayer was for judgment against both defendants for the balance due after the payment of the sum of $541.80. Both defendants answered by general denial and by special pleas, which, in the view we take of the case, will not be necessary to set out. The case was tried before a jury, and upon an instructed verdict in favor of defendant Chinski a judgment was duly entered for him. No complaint is made of this by appellee on this appeal. The issues as between plaintiff and the defendant Barry were submitted to the jury by the charge of the court, and a trial resulted in a verdict and judgment for plaintiff against Barry for the amount claimed by him in his petition, and from this judgment the defendant Barry has appealed.

After all the evidence had been introduced, the appellant requested the court to give to the jury his special charge No. 1, which was a peremptory instruction in his favor. The court's refusal to give this charge is made the basis of appellant's third assignment of error. The evidence in the record justifies the following fact conclusions: R. J. Barry was a produce broker, and as such was agent for the Wm. Roylance Company in making the sale of the apples to Chinski at the agreed price of $1.35 per box. The apples were shipped from Provo, Utah, on October 21, 1907, but were delayed in transit and did not reach Beaumont until between the 20th and 24th of November, 1907. The terms of sale were cash upon acceptance by Chinski of the apples after he had reasonable opportunity for inspection. When the apples reached Beaumont, Chinski, on account of the then existing financial depression, and because of the rules adopted by the banks of Beaumont which prevented depositors

from withdrawing more than $25 of their deposits per day, was unable to take up the draft drawn on him by appellee for the price of the apples, so on November 26, 1907, he sent to appellee by telegraph the following message: "Release draft. Will remit for apples thirty days." This telegram was signed, "S. E. Texas Produce Co." At the same time and at the request of said Chinski, appellant Barry telegraphed appellee as follows: "On account money matters Southeast cannot protect draft, release, remit thirty days." By "Southeast" was meant the Southeast Texas Produce Company, and was so understood by appellee. On the same day, and in answer to Barry's telegram, appellee telegraphed to Barry as follows: "Will release car of apples you guaranteeing payment draft thirty days. Answer quick." On the next day, the 27th, Barry answered by telegraph as follows: "We cannot guarantee. Can secure thirty day note. Answer quick." November 29, 1907, appellee answered the telegram of Barry next above quoted as follows: "Prefer releasing car to you, you making settlement with Southeastern. Will give you thirty days time. Answer." To this Barry replied also by telegram as follows: "Release to us at once. Will do the best we can on settlement." On receipt of the telegram last copied, appellee sent to Barry another telegram which authorized the railroad company to turn the car over to Barry. Chinski at once paid the freight charges on the car load, received and accepted the apples, and disposed of the same in due course of trade. Afterwards, claiming that the apples were not worth more than 90 cents per box, he paid over to Barry the sum of 90 cents per box, aggregating $541.80, and this sum Barry paid to appellee. Chinski's reason for not paying the full amount originally agreed upon was that, when appellee refused to release the apples to him, he understood that the trade was off so far as he was concerned; that the car load was turned over to him by Barry, and in the condition they were in when he received the apples they were not worth more than 90 cents a box. There was no testimony authorizing a belief that a new sale was made by Barry to Chinski, or any different price agreed to be paid by the latter therefor, but, on the contrary, it was shown by the testimony of Tippett, Barry's bookkeeper, who sent the last telegram to appellee (and he did this at Chinski's request), that "there was nothing said about changing the contract price of the apples. The only question was, as I understood it, that Mr. Chinski wanted 30 days time. In our conversations there was nothing said about receiving the car at a less price than the contract price."

It seems clear to us that, if Barry purchased the apples and bound himself to pay for them, this agreement must be gotten out of the telegrams herein quoted. That he

was not bound as a guarantor, and that he refused to so bind himself, is expressly shown. So whatever contract bound him to pay must be evidenced by the telegrams passing between himself and appellee subsequently to his declination to guarantee payment by Chinski. Appellee contends that the telegrams of November 29th evidence this contract. That sent by appellee is: "Prefer releasing car to you, you making settlement with Southeastern. Will give you thirty days time." Can this be construed as a proposition to sell to Barry? If it was so intended, why say that Barry should make settlement with the Southeast Texas Produce Company? If the sale to Chinski had been rescinded, what settlement was there to be made with him? Barry had not offered to buy, but at most to assist the parties, securing to one an extension of time and procuring for the other a thirty day note. And what is meant by, "Will give you thirty days time"? To pay for the apples or to make settlement with Chinski? Clearly the latter. And was Barry's telegram in reply an acceptance of an offer of sale, or was it merely an agreement to represent appellee in making settlement? He said: "Release to us at once. We will do the best we can on settlement." What settlement? A settlement as purchaser, or a settlement with Chinski? Clearly, it seems to us, the latter. This construction seems to be the same that was placed by appellee upon the transaction, for in his letter written to Barry February 21, 1908, before this suit was brought and evidently at a time when he regarded Barry as guarantor only and not as the purchaser, he said: "Referring to yours of recent date * * * with reference to the amount still due us on the Barry Bros. car of apples, amounting to $270.80, I don't know how you can get any understanding other than that the full amount of this invoice was to be paid to us. The telegrams all so specify and we released the car to you with the complete understanding that you were to collect the money and remit it to us in thirty days. The apples were accepted by the Southeast Texas Produce Company, and settlement made on basis of thirty days payment, and now for you to undertake to remit us only $541.80 instead of $812.70, making a difference of $270.90 is something I cannot understand," etc.

We think the evidence is wholly insufficient to prove a purchase by Barry or an agreement on his part to take and pay for the apples either as guarantor or as purchaser, and that, therefore, the peremptory charge to find for the appellant should have been given.

This conclusion obviates the necessity of a discussion by us of the other assignments presented by appellant.

The judgment of the county court is reversed, and judgment is here rendered for appellant.

Reversed and rendered.